```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **DARIANA D. ELLIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1274** |
| **ANDREW SAUL,**<br>**COMMISSIONER OF THE SOCIAL**<br>**SECURITY ADMINISTRATION** | **SECTION: "B"(1)** |

## ORDER AND REASONS

Before the Court are the Magistrate Judge's Report and Recommendation (Rec. Doc. 26) on petitioner Dariana D. Ellis' ("Ellis") and respondent, Andrew Saul, Commissioner of the Social Security Administration's ("Commissioner") cross motions for summary judgment (Rec. Docs. 18, 25); and petitioner's objections to the Report and Recommendation. Rec. Doc. 27 at 1. For the reasons discussed below,

**IT IS ORDERED** that petitioner's objections are overruled and the Magistrate Judge's Report and Recommendation are **ADOPTED** as the opinion of the court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner seeks judicial review of an adverse decision made by the Social Security Administration regarding Ms. Ellis' eligibility for social security benefits. Rec. Doc. 1. On June 18, 2011, she filed an application for disability insurance benefits, alleging a disability onset date of April 25, 2011. Rec Doc 25-1

at 1. On June 26, 2012, the administrative law judge ("ALJ") issued a decision in favor of petitioner and found her disabled as of April 25, 2011 pursuant to a continuing disability review. *Id.* at 2. In 2016, the Commissioner determined that Ms. Ellis' disability ceased as of March 22, 2016 in view of her apparent medical improvement since her initial application for disability in 2011. *Id.*

On April 19, 2011, Ellis presented at the Southern Maine Medical Center with nausea, vomiting and intermittently severe left upper quadrant pain. Rec. Doc. 26 at 2. After being discharged, Ellis returned to the emergency room with ongoing pain. Rec. Doc. 26 at 2. A CT scan was performed, showing a large wedge-shaped defect in the spleen consistent with infarcts and abnormality of the left ventricle. *Id.* at 2-3.

Ms. Ellis underwent open heart surgery. *See id* at 3. On April 25 and April 27, 2011, she received a left heart catheterization, coronary arteriography, resection of LV diverticulum, and closure of PFO. *Id*. Following surgery, her physical and mental condition deteriorated. *Id.* at 6-8.

On May 8, 2012, licensed clinical social worker Marianne Donahue reported that she had provided counseling to Ms. Ellis since November 2011. *Id.* at 6. It was noted at this time that Ms. Ellis was unable to work due to her mental impairments, including depression and anxiety. *See id.* at 5-6.

On May 9, 2012, Dr. Magile-Quinn performed a physical capacity evaluation of the petitioner. *Id.* at 7. She concluded that Ms. Ellis possessed a limited capacity to stand, walk, sit, and lift items. *Id.* Dr. Magile-Quinn diagnosed Ellis' unremitting chest wall pain as costochondritis. *Id.*

Ms. Ellis reported worsened mental and physical symptoms following the cessation of her benefits. *Id.* at 3-6. In April 13, 2016, Ellis reported to having intermittent and sporadic chest pain. *Id.* at 11-20. Meetings with Raymond Martinez, Licensed Professional Counselor, and Dr. Wasseff show instances where Ms. Ellis' mental condition was poor. *Id.* at 11-22.

However, Ms. Ellis' medical history shows that her intermittent chest pain was not cardiac in nature and was more likely caused by anxiety. *Id.* at 17-20. Ms. Ellis' medical history also indicates her mental disabilities had generally improved over time, while showing outlier sessions of regression. *Id.* at 11-24.[1]

Following the cessation determination, Ms. Ellis requested a hearing before the ALJ to review the Commissioner's decision. *Id.* at 25. At her hearing, the ALJ determined that Ms. Ellis suffered from the following medically determinable impairments since her benefits had ceased: obesity, costochondritis, status-post splenic infarct, major depressive disorder, and post-traumatic stress

---

[1] The Magistrate Judge provides an in-depth summary of petitioner's complete medical history in their Report and Recommendation. *See* Rec. Doc. 26 at 2-25.

disorder. *Id.* However, the ALJ found that these impairments had improved to the point where Ms. Ellis was no longer considered disabled according to the Social Security Administration. *Id.* The ALJ consulted a vocational expert, who testified that Ellis was able to perform a significant number of jobs in the national economy. *Id.* at 26.

On November 5 2020, the petitioner filed a motion for summary judgment, arguing that the ALJ's decision was arbitrary, contrary to law and unsupported by substantial evidence. Rec. Doc. 18 at 1. On February 1 2021, the Commissioner filed a cross-motion for summary judgment, arguing that the Commissioner applied the correct legal standards and substantial evidence supported the decision to end petitioner's disability benefits. Rec. Doc. 25 at 1. Both motions were referred to the Magistrate Judge to make a report and recommendation to this Court.

On April 20 2021, the Magistrate Judge ruled in favor of the Commissioner, finding that the ALJ applied the correct legal standards and gave appropriate weight to the findings of Mr. Martinez. Rec. Doc. 26 at 28-38.

## **LAW AND ANALYSIS**

### A.   Standard of Review

Summary judgment is appropriate if the record shows there is no genuine issue of material fact and that the moving party is

entitled to a judgment as a matter of law. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing Fed. R. Civ. P. 56(c)). The party moving for summary judgment has the initial burden of identifying portions of the pleadings, filed discovery and affidavits which demonstrate a lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If a movant carries its burden, the burden then shifts to the non-movant to show that summary judgment should not be granted. *Id*. at 324-325. While we must "review the facts drawing all inferences most favorable to the party opposing the motion," that party cannot use only allegations or denials in its pleadings to meet its burden; they must set forth specific facts showing a genuine issue for trial exists. *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986); *See Spellman*, 1 F.3d at 360.

This Court's function on review of the Secretary's denial of disability benefits is to determine whether substantial evidence exists in the record as a whole to support the Secretary's factual findings. *Fraga v. Bowen,* 810 F.2d 1296, 1302 (5th Cir. 1987). If the Secretary's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing 42 U.S.C. § 405(g)); *Richardson v. Perales,* 402 U.S. 389 (1971). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v.*

*Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)(quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990)). When applying the substantial evidence standard, courts are required to scrutinize the record in determining whether such evidence is present, but may not reweigh the evidence, try the issues de novo, or substitute their own judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994) (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir.1989); *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). However, if the Commissioner's findings are supported by substantial evidence, they must be affirmed. *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir.1995).

Ellis raises four objections to the report and recommendation pertaining to the sufficiency of the Magistrate Judge's review of the ALJ's decision and the ALJ's deference to LPC Martinez' opinion. *See* Rec. Doc. 27-1. The objections are addressed in two parts: (1) examining how the Magistrate Judge's Report and Recommendation performed a legitimate review of the ALJ's decision, before (2) discussing how the Report and Recommendation properly concluded that the ALJ gave proper deference to LPC Martinez' opinion.

**B.**   **FINDINGS**

Pursuant to the express authorization of Congress, the Social Security Administration has created a five-step sequential evaluation process to determine whether an individual is disabled:

6

(1) If the petitioner is presently working, a finding of "not disabled" must be made; (2) if the petitioner does not have a "severe impairment" or combination of impairments, she will not be found disabled; (3) if the petitioner has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded; (4) if the petitioner is capable of performing past relevant work, a finding of "not disabled" must be made; and (5) if the petitioner's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience and residual functional capacity, she will be found disabled. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citing 20 C.F.R. §§ 404.1520, 416.920); *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir.1991). The petitioner bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. *Newton*, 209 F.3d at 453.

If an individual is found to be disabled, an individual's disability benefits may be terminated if the trier of fact finds substantial evidence supports (1) petitioner's medical improvement in the individual's impairment or combination of impairments related to the individual's ability to work. and (2) her ability to engage in substantial gainful activity. *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)(citing 20 C.F.R. § 404.1594(b)(3)).

Medical improvement is defined as "any decrease in the medical severity of [petitioner's] impairment(s) which was present at the time of the most recent favorable medical decision that [the petitioner was] disabled or continued to be disabled." *See id.* at 944 (citing 20 C.F.R. § 404.1594(b)(1)). The petitioner must then establish a decrease in medical severity by offering evidence based on the "symptoms, signs, and/or laboratory findings associated with petitioner's impairment(s)." *See Valdez v. Colvin*, No. CIV.A. SA-13-CA-140, 2013 WL 6418973, at *2 (W.D. Tex. Dec. 6, 2013). Medical improvement is related to the individual's ability to work when there has also been an increase in petitioner's "functional capacity to do work activities." *Id.* Lastly, petitioner must establish that the petitioner's impairments do not "prevent (petitioner) from doing past relevant work." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Petitioner asserts that both the Commissioner and the Report and Recommendation failed to use signs, symptoms and medical findings to assess the change in her physical and mental impairments from the CPD to her current condition. Rec. Doc. 27-1 at 3.

Regarding her physical impairments, Ellis claims that "nothing in her new file shows improvement of different symptoms or decreased medical findings. *See* Rec. Doc. 27-1 at 3. However, this contention ignores the Magistrate Judge's review of the ALJ's

8

CPD and termination of benefits determination. Rec. Doc. 26 at 33. The Report and Recommendation explained how the ALJ compared evidence used in Ellis' CPD, including Dr. Magile-Quinn's findings of petitioner's occupational limitations, to Ellis' subsequent medical records in determining whether to terminate her benefits. *Id.* Moreover, the Magistrate Judge cited to specific instances in the record where Ellis' reported improvement in her chest pain, including large gaps in treatment where Ellis did not complain of pain and echocardiograms that consistently showed her palpitations were not cardiac in nature. *Id.* Therefore, Ellis' concerns about her symptoms do not outweigh the evidence that her intermittent chest pain was caused by psychological conditions such as anxiety, and had improved since her CPD. *Id.*

Petitioner objects that both the Magistrate Judge and Commissioner's brief failed to compare the signs, symptoms and laboratory findings at the time of the CPD to her current mental conditions' signs and symptoms. *See* Rec. Doc. 27-1 at 4. Within this argument, petitioner asserts that new evidence from her visits to Dr. Wasseff and LPC Martinez reveal her depression has worsened. *Id.*

As petitioner correctly notes, depression by its nature fluctuates in terms of its symptoms and the severity of those symptoms. *See id.* at 5. Even so, petitioner's contention fails on its merits because of the multitude of evidence the Report and

9

Recommendation cites to the contrary. Rec. Doc. 26 at 34. It notes that both LPC Martinez and Dr. Wassef reported that Ellis' condition improved from June to December 2017. *Id.* at 35. While petitioner reported being frustrated about medical issues from March to May 2018 to Dr. Wassef, the petitioner consistently reported she was doing "ok" during the same period. *Id.* Her mental condition fluctuated from 2011 to 2016 but substantial evidence in the record supports the Report and Recommendation's finding that her mental condition had notably improved. *Id.*

The ALJ does not have untethered authority to disregard the opinion of a treating physician. *See* Newton, 209 F.3d. at 453.

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Id.* The Fifth Circuit in *Newton* explained that "absent reliable medical evidence from a treating or examining physician," the ALJ can "only" reject the opinion of a treating physician if they provide a good reason for the weight given to the treating source's opinion. *Id.*

However, if the ALJ determines a treating physician's opinions are "inconclusive" or "otherwise inadequate to receive controlling weight," the ALJ must seek additional evidence or clarification from the treating source, "absent other [contravening] medical opinion evidence based on personal examination or treatment of the [petitioner]." *Id.*; *Horton v. Berryhill*, No. CV H-18-3341, 2020 WL 1321820, at *4 (S.D. Tex. Feb. 27, 2020), *report and recommendation adopted*, No. CV H-18-3341, 2020 WL 1321817 (S.D. Tex. Mar. 19, 2020)(finding ALJ was not obligated to have agency consultants review additional medical records to assess RFC).

Social Security regulations define what is considered a "medical source" and "nonmedical source" in the context of assessing an individual's disability claim. *See* 20 CFR 404.1502 and 416.902. The Social Security's regulations require the ALJ to consider any evidence which tends to support or contradict a *medical opinion,* including opinions of "nonmedical" sources. *See* SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006).

Social Security Ruling, SSR 06-03 endorses this approach, stating that "information, including opinions, from "other sources"—both medical sources and "non-medical sources"—can be important in this regard. *Id.* However, nonmedical sources cannot give medical opinions of controlling weight, 20 CFR 404.1527(d) and 416.927(d), or be considered treating sources as defined in 20

11

CFR 404.1502 and 416.902. *See id.* "Counselors" are explicitly listed under 20 C.F.R. 204.1502(e)(2) as a "nonmedical source."[2] When assessing the weight of either a medical or nonmedical opinion, 404.1527(c) provides a series of factors to consider including: examining their relationship generally, the length, nature and extent of treatment, supportability, consistency, and specialization. 20 C.F.R. 404.1527(c)(1-6); 20 C.F.R. 404.1527(f)(1).

In *Horton,* the court reviewed petitioner's appeal of the ALJ's decision to deny petitioner disability benefits. *Horton*, 2020 WL 1321820, at *1. Horton argued on appeal that the ALJ did not give proper weight to the nonmedical source opinion of her social worker, who testified at the hearing. The *Horton* court explained how the opinion nonmedical sources are assessed:

> Under 20 C.F.R. § 404.1527(f), opinions from nonmedical sources are weighed using the same factors applicable to medical opinions. 20 C.F.R. § 404.1527(f) (2017) (stating that, for all disability applications filed before March 27, 2017, the factors listed in 20 C.F.R. § 404.1527(c)(1) through (c)(6) apply in weighing nonmedical-source opinions). "[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from ... a nonmedical source depends on the particular facts in each case."

---

[2] (e) Nonmedical source means a source of evidence who is not a medical source. This includes, but is not limited to:
(1) You;
(2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
(3) Public and private social welfare agency personnel; and
(4) Family members, caregivers, friends, neighbors, employers, and clergy.

20 C.F.R. § 404.1502(e)

12

*Id.* at *5 (internal citation and quotations omitted). Petitioner asserts that the ALJ failed to give LPC Martinez' opinion proper deference, and therefore constituted an "impermissible substitution of the ALJ's lay opinions for the opinions of a medical professional." Rec. Doc. 27-1 at 7. This assertion fails to consider Social Security Administration regulations that expressly articulate how LPCs like Martinez are considered nonmedical sources and therefore cannot be considered as "treating physicians." 20 C.F.R. 204.1502(e)(2). Despite Ellis' claims to the contrary, the ALJ gave justifications for not giving Martinez' nonmedical opinion "controlling weight," despite not needing to because of Martinez' non-treating source status. *See* Rec. Doc. 26 at 35-37.

Though not required, the ALJ analyzed Martinez' opinion using the same factors that would be applied to any other "medical source," despite the existence of "reliable medical evidence from a treating or examining physician[s] elsewhere."[3] *Horton*, 2020 WL 1321820, at *5

The Report and Recommendation noted that ALJ found that the limited frequency and length of time in which Martinez treated

---

[3] The record contains the opinion of Dr. Wasseff, M.D., a psychiatry specialist considered to be a medical source under the Act.

13

Ellis further weighed against imposing controlling weight on Martinez' opinion.[4] Rec. Doc. 26 at 36.

The Magistrate Judge also found that Martinez' September 2016 report, which Ellis had used to support the claim that her mental condition has regressed, was not supported by the treatment record as a whole. *Id*. The Magistrate Judge concluded that the ALJ did not insert their lay opinion in lieu of LPC Martinez' because of the substantial evidence supporting this position. *Id*.

Martinez was a nonmedical source. 20 C.F.R. 204.1502(e)(2). Much like how ALJ did not have to give justification for rejecting LPC Martinez' opinion to begin with, the ALJ did not need to clarify or seek additional evidence from LPC Martinez because of his nonmedical source status. *See Newton*, 209 F.3d at 453. The ALJ did not create an "evidentiary void" or impart their own lay opinions in Ms. Ellis' case because, as the Commissioner notes in his initial report, and the Magistrate Judge in her Report and Recommendation, that the treatment records of Dr. Wassef, a medical source, and the records of Martinez, a nonmedical source, were both used to varying weights in ALJ's decision to terminate Ms. Ellis' benefits. Rec. Doc. 26 at 36.

New Orleans, Louisiana this 23rd day of August, 2021

---

[4] How long the source has known and how frequently the source has seen the individual are sub factors considered under 20 C.F.R. § 404.1527(c)(2).

14

_____
SENIOR UNITED STATES DISTRICT JUDGE

15